IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

SCOTTY D. FULTON,                    )
                                     )
            Plaintiff,               )
                                     )
                                     )      CIV-13-1108-HE
v.                                   )
                                     )
CAROLYN W. COLVIN,                   )
  Acting Commissioner of Social      )
  Security Administration,           )
                                     )
            Defendant.               )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying his applications for disability insurance benefits ("DIB")

and supplemental security income benefits ("SSIB") under Title II and Title XVI of the

Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint

and filed the administrative record (hereinafter TR___), and the parties have briefed the

issues. The matter has been referred to the undersigned Magistrate Judge for initial

proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is

recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff applied for benefits on August 18, 2005, alleging he became disabled on

January 1, 2003, due to back and mental impairments. (TR 126). An administrative hearing

on the applications was conducted before administrative law judge Thompson ("ALJ

1

Thompson") on May 31, 2007. (TR 846-949). ALJ Thompson issued an unfavorable decision, and the Appeals Council rejected this decision and remanded the case for further administrative proceedings. (TR 13-14). A second hearing was conducted before ALJ Thompson on November 5, 2009. (TR 302-395). At this hearing, Plaintiff and a vocational expert ("VE") testified. ALJ Thompson issued a decision on December 21, 2009, in which ALJ Thompson found that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 19-32). The Appeals Council declined to review the decision. (TR 5-7).

Plaintiff appealed the final decision of the Commissioner to this Court. The case was referred to United States Magistrate Judge Couch for proceedings pursuant to 28 U.S.C. §636(b)(1)(B), and on October 28, 2011, Judge Couch issued a Report and Recommendation finding that legal errors by ALJ Thompson in the December 2009 decision warranted reversal of the Commissioner's decision and a remand to the agency for further administrative proceedings.

Specifically, Judge Couch found that "there [was] no medical evidence in the record (other than the rejected agency opinion) that support[ed] the ALJ's conclusion that Mr. Fulton [could] perform light work, and this finding [was] not based on substantial evidence." (TR 442). Additionally, Judge Couch found that "the ALJ did not adequately account for Mr. Fulton's marked limitation in social functioning [as found by the agency medical consultant, Dr. Kendall, Ph.D., in a Psychiatric Review Technique (" PRT") form dated January 5, 2006] in his hypothetical questions to the VE" and "[w]hen Mr. Fulton's attorney questioned the VE regarding the effect of a marked limitation in social functioning, including

interaction with coworkers and supervisors, the VE explained that unskilled work, by its nature, requires close supervision and that such a limitation would eliminate 85% - 90% of unskilled work at any exertional level." (TR 444). Judge Counch found that ALJ Thompson's RFC findings were not supported by substantial evidence and that on remand "the Commissioner should include all limitations in the hypothetical questions to the VE and determine whether there are a sufficient number of jobs available that Mr. Fulton could perform." (TR 444).

Judge Couch also found error in ALJ Thompson's credibility determination because "the limited treatment records dated before 2008 do not necessarily support a conclusion of exaggerated allegations of pain" and ALJ Thompson discounted the credibility of Plaintiff's wife's testimony for improper reasons. (TR 446). Finally, Judge Couch found that the jobs identified by the VE and relied on by the Commissioner to support the step five determination were inconsistent with the RFC assessment made by ALJ Thompson in light of Dr. Kendall's finding that Plaintiff had marked limitations in social functioning. (TR 447).

Judge Couch's Report and Recommendation was adopted by District Judge Heaton, and the Commissioner's decision was reversed and the case remanded for further proceedings consistent with the decision. (TR 434-435). The Appeals Council subsequently entered an Order remanding the case to an administrative law judge "for further proceedings consistent with the order of the [district] court." (TR 451). Further, the Appeals Council noted that Plaintiff had filed subsequent claims for Title II and Title XVI benefits on November 10, 2010, and directed the administrative law judge to "associate the claim files

and issue a new decision on the associated claims" as well as offer the Plaintiff the opportunity for a new hearing, complete the administrative record, and issue a new decision. (TR 451).

A supplemental hearing was conducted on October 4, 2012, before Administrative Law Judge Stults ("ALJ Stults"). (TR 962-1018). Plaintiff testified that he has an eighth grade education, he had not worked since the summer of 2003, and that he could not work due to back pain, anxiety, urinary frequency, and depression. Plaintiff's wife and his mother also testified at the hearing, as well as a vocational expert ("VE").

ALJ Stults issued a decision on August 27, 2013. (TR 399-417). In this decision, ALJ Stults found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2006, with respect to his Title II application. The ALJ also found that Plaintiff had not worked since January 1, 2003, his alleged onset date. Following the agency's well-established sequential evaluation procedure, the ALJ found at step two that Plaintiff had severe impairments due to "disorders of the cervical and lumbar spine, discogenic and degenerative; major depressive disorder, recurrent, moderate; social phobia; and polysubstance dependence."

At step three, ALJ Stults found that Plaintiff's impairments did not meet or equal the requirements of a listed impairment. Specifically, with respect to the listings at 1.00, including Listing 1.04, the ALJ found that there was no objective medical evidence of loss of gait and station or lack of gross or fine manipulation, no evidence of joint dysfunction or malformation, and no consistent medical evidence of reflex loss, motor loss, sensory loss,

4

muscle atrophy, or positive straight leg raising. With respect to Listings 12.04, 12.06, and 12.09, ALJ Stults found that Plaintiff's mental impairments had resulted in only moderate restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence, or pace, and one or two episodes of decompensation of extended duration.

At the fourth step, ALJ Stults found that Plaintiff had the residual functional capacity ("RFC") to perform the requirements of sedentary work with the limitations that he can only occasionally climb ramps or stairs, balance, or stoop, never climb ropes, ladders, or scaffolds, kneel, crouch, or crawl, he must avoid exposure to vibration, he can sit for only 30 minutes at a time before he must stand briefly at his workstation for less than 5 minutes, he can understand, remember, and carry out only simple instructions, he can make only simple work-related decisions, he can deal with only occasional changes in work process or environment, he should work with things rather than people and thus have no contact with the public and only incidental, superficial work-related contact with co-workers and supervisors, and he should not be required to read above the sixth grade level or write or use mathematics above the third grade level for any work tasks.

At the most recent administrative hearing, ALJ Stults inquired of the VE as to the availability of jobs for an individual with this limited ability to work. The VE testified that such an individual could perform two jobs, that of surveillance system monitor and final assembler. Relying on this testimony, ALJ Stults found in the decision that Plaintiff was not capable of performing any of his previous jobs but he could perform the requirements of jobs

in the economy, including the jobs identified by the VE. Therefore, the ALJ concluded Plainitff was not disabled within the meaning of the Social Security Act.

ALJ Stults recognized that the VE's testimony was inconsistent with the information contained in the U.S. Department of Labor's Dictionary of Occupational Titles ("DOT") but found "there is a reasonable explanation for the discrepancy" and the VE "supplemented his testimony with his knowledge, experience, training, and observations of these occupations." (TR 416).

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052

(citations, internal quotation marks, and brackets omitted).

The Commissioner found that Plaintiff's insured status with respect to his DIB application expired on December 31, 2006. Consequently, Plaintiff must demonstrate he was disabled on or before December 31, 2006, with respect to his DIB application. See Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir. 1990)(*per curiam*)(to receive disability insurance benefits a claimant must show he or she was "actually disabled [within the meaning of the Social Security Act] prior to the expiration of his insured status"); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993).

III. Evaluation of the Evidence

Plaintiff first contends that the ALJ erred by failing to discuss probative evidence in the record. Specifically, Plaintiff points to the diagnostic impression of a consultative psychological examiner, Dr. Lynch, Ph.D. In a related argument, Plaintiff contends that ALJ Stults's step two findings were erroneous because the ALJ did not include the diagnostic impressions made by Dr. Lynch. At step two, the ALJ must determine "whether the claimant has a medically severe impairment or combination of impairments." Bowen v. Yuckert, 482 U.S. 137, 140-141(1987).

Dr. Lynch evaluated Plaintiff for the agency on November 30, 2005. On the basis of an interview and mental status testing, Dr. Lynch reported a diagnostic assessment of panic disorder with agoraphobia and avoidant personality disorder. (TR 194). ALJ Stults recognized in the decision that Plaintiff had been evaluated by Dr. Lynch. As ALJ Stults

pointed out in the decision, Dr. Lynch found that Plaintiff exhibited average to low average intelligence, he could follow three-step instructions, and he exhibited intact memory and judgment. (TR 402).

Although ALJ Stults did not include in the decision Dr. Lynch's diagnostic impression, ALJ Stults found at step two that Plaintiff had severe mental impairments of major depressive disorder, recurrent, moderate, social phobia, and polysubstance dependence. (TR 402). Even though ALJ Stults did not include Dr. Lynch's diagnostic impression of panic disorder with agoraphobia and avoidant personality disorder at step two, any error at step two does not necessitate a reversal of the Commissioner's decision because ALJ Stults found that Plaintiff had severe mental and physical impairments. See Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008)(holding any error at step two "became harmless when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence"); Oldham v. Astrue, 509 F.3d 1254, 1256 (10th Cir. 2007)(finding court could "easily dispose of" argument that ALJ should have found additional impairments to be severe because "[t]he ALJ . . . made an explicit finding that [the claimant] suffered from severe impairments. That was all the ALJ was required to do in that regard."); Shaffer v. Astrue, 2011 WL 3348028 (N.D.Okla. 2011)(unpublished op.)(noting it is "well-settled law in this circuit that any error at Step Two is harmless so long as the ALJ finds at least one condition to be severe, so that the five-step sequential evaluation continues). Therefore, ALJ Stults's failure to include Dr. Lynch's diagnostic impression in the step two finding is, at best, harmless error.

Contrary to Plaintiff's argument in his opening brief, ALJ Stults's decision reflects that the ALJ expressly considered the progress notes of Plaintiff's treating family physician, Dr. Krieger. ALJ Stults noted in the decision that "[i]n November 2006, the claimant presented and reported that he had depression and anxiety. He was given Effexor and Xanax. Notes in December 2006 stated that he was much improved." (TR 403). This note accurately describes Dr. Krieger's progress notes. (TR 230). ALJ Stults did not err by failing to set forth in the decision either the diagnostic impression of Dr. Lynch or the progress notes of Dr. Krieger.

IV. Steps Two, Three, and Four - Mental Impairments

Plaintiff contends that ALJ Stults deviated from the remand order entered in this Court. See Sullivan v. Hudson, 490 U.S. 877, 886 (1989) ("Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review."). Plaintiff contends that the ALJ erroneously relied on the opinions of other agency medical consultants and erred in giving Dr. Kendall's medical opinion only "minimal weight."

In Judge Couch's Report and Recommendation, Judge Couch found that "the ALJ did not adequately account for Mr. Fulton's marked limitation in social functioning [as found by the agency medical consultant, Dr. Kendall, Ph.D.] in his hypothetical questions to the VE." ALJ Stults found that Dr. Kendall's opinion expressed in the psychologist's mental RFC assessment ("MRFCA") and PRT form was entitled to only "minimal weight." (TR 413). ALJ Stults reasoned that "[s]ubsequent medical evidence of record (MER) and review makes

the opinions expressed in these exhibits moot. . . .” (TR 413). ALJ Stults does not indicate what medical evidence existed that was not considered in the previous decisionmaking process. However, as explained below, this reasoning is not critical to the decisionmaking process in this case.

Dr. Kendall's opinion was rendered in January 2006, within the period in which Plaintiff was still insured for DIB purposes. The opinion is based on Dr. Kendall's review of the medical record, including the consultative psychological evaluation of Plaintiff conducted by Dr. Lynch, Ph.D., on November 30, 2005. It is, therefore, relevant to the DIB application.

ALJ Stults gave “greater weight” to the opinion expressed by Dr. Hartley, Ph.D., on March 14, 2011. (TR 414). Dr. Hartley opined on a PRT form dated March 14, 2011, that for the time period between “July 10, 2003 [sic]” and December 31, 2006, the date his DIB insured status expired, there was “insufficient evidence” in the record from which to determine the degree of functional limitations resulting from Plaintiff's alleged mental impairments. (TR 608, 620). Dr. Hartley stated that there was no relevant medical evidence of record and no consultative evaluation, despite the fact that Plaintiff's treating family physician, Dr. Krieger, had prescribed anti-depressant and anti-anxiety medications for Plaintiff in November and December 2006 (TR 230) and Plaintiff had undergone a consultative psychological evaluation conducted by Dr. Lynch during the relevant time period. ALJ Stults did not rely on Dr. Hartley's PRT form, however, and rated the severity of Plaintiff's functional limitations in connection with the step three determination. (TR 410).

10

The ALJ provided reasons that are well supported by the record for the ratings.

A PRT form is "structured specifically in terms of the B and C criteria of the listings for mental impairments" and is "used to assess mental impairments for purposes of steps two (identifying severe impairments) and three (rating severity for the listings)." Chrismon v. Colvin, 531 Fed. Appx. 893, 897-98 (10th Cir. 2013)(citing 20 C.F.R. §§ 404.1520a, 416.920a)(unpublished op.). A mental RFC assessment ("MRFCA"), on the other hand, "breaks down the broad categories of the PRT into functional components for the finer vocational determinations required at steps four and five." Id. at 898. This distinction is explained in Social Security Ruling ("SSR") 96-8p:

> The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings . . . and summarized on the [PRT].

SSR 96-8p, 1996 WL 374184, at *4 (1996). "Thus, the PRT has single global ratings for social function and maintaining concentration, persistence, or pace, while the MRFCA breaks these categories down into five and eight distinct functions, respectively." Chrismon, 531 Fed. Appx. at 898.

Although Dr. Kendall found that Plaintiff had "marked" limitations in social functioning, "moderate" limitations in activities of daily living, and "moderate" limitations in maintaining concentration, persistence, or pace on the PRT form, ALJ Stults provided

reasons that are well supported by the record for finding that Plaintiff's mental impairments had resulted in only moderate functional limitations. (TR 410).

Moreover, Dr. Kendall fleshed out the PRT form ratings on the MRFCA. On the MRFCA, Dr. Kendall found that Plaintiff was "moderately limited" in his ability to understand, remember, and carry out detailed instructions, "moderately limited" in his ability to work in coordination with or proximity to others without being distracted by them, "markedly limited" in his ability to interact appropriately with the general public, and "moderately limited" in his ability to respond appropriately to changes in the work setting. (TR 196-197). In further explanation of the MRFCA findings, Dr. Kendall noted that Plaintiff was "able to perform simple and some complex tasks under ordinary supervision," he could "interact with coworkers and supervisors for incidental work purposes but should avoid public contact," and he was "able to adapt to some work change[s]." (TR 198).

Even though ALJ Stults found that Dr. Hartley's opinion was entitled to "greater weight" and that Dr. Kendall's opinion was entitled to only "minimal weight" (TR 413-414), ALJ Stults adopted all of Dr. Kendall's opinion expressed on the MRFCA with respect to the step four determination of Plaintiff's mental RFC for work. ALJ Stults found that in terms of Plaintiff's mental RFC for work Plaintiff was capable of understanding, remembering, and carrying out only simple instructions, making only simple work-related decisions, dealing with only occasional changes in work processes and environment, and he could not work with the general public and could have only incidental, superficial work-related contact with co-workers and supervisors. (TR 411). ALJ Stults also incorporated reading and math

limitations in the RFC assessment in light of Plaintiff's limited (eighth grade) education. Thus, no error occurred in ALJ Stults's evaluation of the opinions of the agency medical consultants with respect to Plaintiff's mental impairments.

Although Plaintiff argues that ALJ Stults should have included "limitations" in the RFC assessment related to the diagnostic impression of panic disorder with agoraphobia, ALJ Stults included in the RFC assessment specific limitations concerning Plaintiff's ability to deal with the public and with co-workers and supervisors. There was no objective medical evidence in the record that Plaintiff was unable to leave his home or that his functional limitations in this respect exceeded those found by ALJ Stults in the RFC assessment. No error occurred in this respect.

Plaintiff also argues that the ALJ should have included additional limitations in the RFC assessment regarding "Plaintiff's Ability to Handle Stress or to Concentrate and/or Maintain Work Pace." Plaintiff's Opening Brief, at 14. Plaintiff refers only to a record of treatment of Plaintiff from 1999, well before Plaintiff alleged he became disabled in 2003, and to Plaintiff's and his mother's subjective statements concerning his inability to handle stress. The ALJ included in the RFC assessment limitations to work involving only simple instructions and to work involving only occasional changes in work processes and environment. Plaintiff fails to point to objective medical evidence in the record, and the record contains no such evidence, that would further limit Plaintiff's mental work-related abilities beyond these limitations set forth in the RFC assessment.

The ALJ found at step five that Plaintiff was not disabled because he was capable of

performing jobs available in the economy. This determination was based on the VE's testimony at the hearing that an individual with Plaintiff's mental and physical RFC assessment could perform the jobs of surveillance system monitor and final assembler. "Hypothetical questions should be crafted carefully to reflect a claimant's RFC as 'testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Commissioner's decision.'" Wiederholt v. Barnhart, 121 Fed. Appx. 833, 839 (10th Cir. 2005)(unpublished op.)(quoting Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991)(brackets omitted).

In Wiederholt, the court reversed the decision on the basis that "[t]he relatively broad, unspecified nature of the description 'simple' and 'unskilled' does not adequately incorporate the ALJ's additional, more specific findings regarding Mrs. Wiederholt's mental impairments . . . such as moderate difficulties maintaining concentration, persistence or pace, [and] the resulting hypothetical question was flawed." Id. Plaintiff relies on this unpublished decision and another unpublished decision, Miranda v. Barnhart, 205 Fed. Appx. 638 (10th Cir. 2005), in arguing that the ALJ's RFC finding did not adequately convey to the VE the "moderate" limitations in concentration, persistence, or pace found by the agency medical consultants.

The ALJ expressly included in the RFC assessment the specific, work-related limitations set forth in Dr. Kendall's MRFCA. As discussed previously, the MRFCA is designed to flesh out the PRT findings, including any limitations in a claimant's concentration, persistence, or pace due to mental impairments. Plaintiff has not shown that the specific, work-related mental limitations included in the ALJ's RFC finding are

14

inadequate to address the "moderate" limitations in concentration, persistence, or pace found by the agency medical consultants.

V. Credibility

Although Plaintiff argues that the ALJ's credibility assessment was faulty, ALJ Stults's decision sets forth numerous reasons for finding that the credibility of Plaintiff's testimony should be discounted. (TR 413). "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). But an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements" in determining a claimant's credibility. SSR 96-7p, 1996 WL 374186, at * 4 (1996). Credibility findings must "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002)(quotations and alteration omitted).

Here, ALJ Stults cited inconsistencies in Plaintiff's statements in the record and inconsistencies between Plaintiff's statements and the medical evidence. Although Plaintiff questions whether ALJ Stults accurately described Plaintiff's treatment records at his treating mental health clinic, Red Rock, those records support ALJ Stults's statement that "[r]eports from Red Rock show that he was able to focus and his mental status examinations were essentially normal with the claimant having some anxiety." (TR 413). See TR 572, 574, 582, 587, 594, 595, 596. The ALJ's credibility determination is supported by the record and

should not be disturbed.

## VI. Evaluation of Non-Acceptable Medical Source Statement

The record contains a letter from a case manager, Ms. Hull, at Plaintiff's treating mental health clinic dated January 25, 2011, and addressed to the state agency. In this letter, Ms. Hull states that Plaintiff had been treated at the clinic since September 2010 and that he was diagnosed with unspecified mood disorder. (TR 566). Ms. Hull listed several of Plaintiff's symptoms and stated that Plaintiff displayed "marked restriction of daily living activities." (TR 566). Further, Ms. Hull stated that Plaintiff exhibited "marked difficulty in social functioning" that prevented him from maintaining employment "due to panic attacks and paranoia that causes conflict." (TR 567). Finally, Ms. Hull stated that Plaintiff had "marked difficulty in concentrating" that also prevented him from maintaining employment because "he would be required to follow directions and complete tasks in a timely manner" and he was unable to do so. (TR 567).

The ALJ rejected this assessment on the basis that "Ms. Hull is not an acceptable medical source as defined by the regulations." (TR 405). The ALJ also stated that he had given "minimal weight" to Ms. Hull's letter opinion and "much greater weight" to Dr. Repanshek's opinion that was based on a consultative evaluation of Plaintiff on February 23, 2011. (TR 414). The ALJ reasoned that "Ms. Hull's opinion is not consistent with treatment notes in [the] record showing the claimant was compliant with medications, had no side effects, no involuntary movements, and no suicidal ideation. He had appropriate phsycial appearance, normal speech, appropriate affect, and was fully oriented and alert. He had

normal thoughts.  Delusions and hallucinations were absent.  He was cooperative.  His sleep was normal.  The only symptoms noted were anxious mood in October 2010, December 2010, February 2011 and April 2011. . . . The claimant was able to focus during sessions." (TR 414).

The agency's regulations distinguish between opinions from "acceptable medical sources," who are defined as licensed physicians, psychologists, podiatrists, and qualified speech-language pathologists, and other health care providers who are not "acceptable medical sources." 20 C.F.R. §§ 416.913(a), (d)(1).

SSR 06-3p "clarifies how [the Commissioner] consider[s] opinions and other evidence from medical sources who are not 'acceptable medical sources.'" SSR 06-3p, 2006 WL 2329939, at *4.  The agency states in the ruling that the clarification is necessary because

> [w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources ... are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

Id. at *3.

To effectively further this policy, the agency advises that "[a]djudicators generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence ... allows a claimant or subsequent reviewer to follow the

adjudicator's reasoning." Id. at *6.

The ruling specifically advises that "[s]ince there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity." Id. at * 6.

Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1995).

ALJ Stults in this case expressed consideration of Ms. Hull's letter and the symptoms and opinion Ms. Hull described in the letter. ALJ Stults rejected Ms. Hull's opinion that Plaintiff was disabled, and the ALJ provided reasons for that finding that are well supported by the record. A case manager is not an "acceptable medical source" and therefore may not provide medical opinions. SSR 06-03p, 2006 WL 2329939, at *1-*2 (2006). Here, the ALJ explained that he was not giving the opinion any weight because Ms. Hull was not an acceptable medical source and her statements in the letter concerning Plaintiff's symptoms and mental functional limitations were not consistent with other objective medical evidence in the record. This explanation is well supported by the record, and no error occurred in the ALJ's evaluation of this evidence.

VII.  <u>Step Four - Physical RFC Finding</u>

Plaintiff contends that the ALJ ignored this Court's remand order and erred in determining Plaintiff's physical RFC for work.   ALJ Stults found that Plaintiff was capable of performing only a limited range of sedentary work. Specifically, ALJ Stults found that Plaintiff could (1) sit for only 30 minutes at one time before he must briefly stand at his workstation for 5 minutes or less; (2) only occasionally balance, stoop, or climb ramps or stairs: (3) never kneel, crouch, crawl, or climb ropes, ladders, or scaffolds; and (4) not be exposed to vibrations.  (TR 411).

In the previous decision, the Commissioner found that Plaintiff was capable of performing a limited range of light work, including the ability to lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk for 6 hours in an 8-hour workday. (TR 24).  ALJ Stults obviously found that Plaintiff was much more limited in his ability to perform work-related physical functions, a finding that is consistent with this Court's decision in Plaintiff's previous appeal that there was not substantial evidence in the record to support the earlier "light" work RFC determination.

Plaintiff refers to the record of treatment of Plaintiff by Dr. Lewellen in July 2006 and asserts that the ALJ "failed to explain why he omitted Dr. Lewellen's July 2006 examination findings." Plaintiff's Opening Brief, at 18.  Assuming Plaintiff is arguing here that the ALJ failed to express his consideration of probative evidence in the record, Plaintiff has not shown that Dr. Lewellen's "July 2006 examination findings" were probative evidence that was not considered by the ALJ.  Dr. Lewellen noted in July 2006 that Plaintiff sought

treatment for low back pain that worsened with bending, pushing, and extended periods of walking or sitting, and that Plaintiff stated he had to reposition himself frequently to try to find a comfortable position. He also complained of a skin rash. (TR 232). Dr. Lewellen noted objective findings of a rash, tenderness over the sacroiliac joints and over the lower back, a complaint of pain on straight leg raising, and a complain of radicular pain in both hips, no pain with flexion, and "evident favoring to the [right] side" with walking, with evidence thickening of the heel skin on the left and wearing of the sole on the left shoe. (TR 232). Dr. Lewellen prescribed pain and muscle relaxant medications for "Pain Back Low" and "Sacroiliitis, NOS." (TR 232).

In light of the RFC finding for a limited range of sedentary work with alternate sitting and standing periods and limited or no postural movements, Plaintiff has not demonstrated that Dr. Lewellen's brief examination findings provided probative evidence that should have been expressly considered by ALJ Stults in the decision. Dr. Lewellen did not place limitations on Plaintiff's ability to work or prescribe other than conservative treatment measures for Plaintiff's low back pain. No error occurred in the ALJ's evaluation of the evidence.

Plaintiff next contends that ALJ Stults deviated from this Court's remand order when the ALJ gave "great weight" to the opinion of the agency's medical consultant, Dr. Isaacson, in February 2006 that Plaintiff's back impairments were not severe. (TR 413). Judge Couch pointed out in her Report and Recommendation in Plaintiff's previous appeal of the earlier Commissioner's decision that there was no evidentiary proof to substantiate Dr. Isaacson's

conclusion that Plaintiff was capable of performing work at all exertional levels. (TR 441). In Dr. Isaacson's physical RFC assessment dated February 6, 2006, the consultant stated that no exertional limitations were established by the medical evidence. (TR 215). In explanation for this finding, the consultant stated that "[f]rom the medical information available there is no evidence of any lumbar or upper nor lower extremity abnormalities. These problems maybe on a mental basis [sic]. The claimant is not credible on an organic basis." (TR 219).

ALJ Stults obviously found that Plaintiff's ability to perform the physical requirements of even sedentary work was limited by his back impairment. ALJ Stults' statement that he had given Dr. Isaacson's medical opinion "great weight" is irrelevant, harmless, and does not warrant a remand. Further, the ALJ did not deviate from the remand order by making this statement in light of the RFC finding.

Plaintiff also asserts that the ALJ erred in giving "great weight" to the opinions of the agency's medical consultants, Dr. Kuo and Dr. Budrich. The ALJ stated that he had given only "some weight" to Dr. Kuo's opinion in March 2011 that Plaintiff could perform "light" work. (TR 414)(referring to TR 640). The ALJ further stated in the decision that "[l]ater medical evidence of record (MER) established the claimant's limitation of being able to perform sedentary work." (TR 414). ALJ Stults further stated that he was giving "some weight" to another agency medical consultant, Dr. Burdich's, opinion in June 2011, which affirmed Dr. Kuo's opinion, for the same reasons. (TR 415).

Curiously, ALJ Stults went on to state that he was giving "great weight" to Dr. Kuo's opinion "finding insufficient evidence to rate the Title II allegations of impairment." (TR

415).  Dr. Kuo stated in a brief "case analysis" dated March 23, 2011, that with respect to Plaintiff's DIB application, "I have reviewed the medical evidence and agree with the physical SSA-416 analysis imaged on 3/21/11.  Insufficient evidence - there is inadequate, objective, longitudinal MER regarding [Plaintiff's] allegations prior to [his date last insured for DIB benefits]." (TR 641).  ALJ Stults also stated that he was giving "great weight" to Dr. Budrich's opinion in June 2011 "finding insufficient evidence to rate the Title II allegations of impairment." (TR 415).

Although ALJ Stults stated that he was giving "great weight" to these brief medical opinions, ALJ Stults ultimately determined that Plaintiff was capable of performing a limited range of sedentary work both before his insured status expired (for purposes of his DIB application) and after his insured status expired (for purposes of his SSIB application).  Thus, the conclusion that Dr. Kuo's opinion and Dr. Budrich's opinion concerning Plaintiff's DIB application was entitled to "great weight" is irrelevant, harmless, and does not warrant a remand.

VIII. <u>Step Five - Conflict Between VE Testimony and DOT</u>

Lastly, Plaintiff contends that ALJ Stults did not satisfy his burden of showing the availability of jobs in the economy which Plaintiff could perform because he failed to follow the requirements of Social Security Ruling ("SSR") 00-4p with regard to variations between the VE's testimony and the DOT.

SSR 00-4p requires an ALJ to elicit a reasonable explanation for any conflict between the DOT and a VE's testimony before relying on that testimony to support a step five

determination.  See SSR 00-4p, 2000 WL 1898704, *2 (2000); also see Poppa v. Astrue, 569

F.3d 1167, 1173-74 (10th Cir. 2009)(ALJ must inquire about and resolve any conflicts

between the VE's testimony and DOT's job descriptions).

During the hearing, ALJ Stults presented a hypothetical inquiry to the VE concerning

the availability of jobs for an individual with Plaintiff's RFC for work. (TR 1010-1011).  The

VE responded that an individual with this RFC for work could perform the jobs of

surveillance system monitor and final assembler. (TR 1011).  ALJ Stults stated that "the sit-

stand option I gave you, of course, that's not contemplated [by the] DOT, so have you

supplemented your testimony with your knowledge, experience, training, and observation

of these jobs, not just for that limitation but for all the limitations we've talked about here

today?" (TR 1012-1013).  The VE responded that her testimony was indeed based on her

experience. (TR 1013).

Plaintiff contends that the ALJ should also have addressed another inconsistency

between the VE's testimony and the DOT.  Plaintiff argues that the job of surveillance

system monitor is described in the DOT as requiring a reasoning level of three, and the Tenth

Circuit Court of Appeals indicated in the published decision in Hackett v. Barnhart, 395 F.3d

1168 (10th Cir. 2005), that the level three reasoning level required to perform the job of a

surveillance system monitor "seems inconsistent with" a claimant's RFC limitations to

"simple and routine work tasks." Id. at 1176.  The court reversed the Commissioner's

decision in that case "to allow the ALJ to address the apparent conflict between Plaintiff's

ability to perform more than simple and repetitive tasks and the level-three reasoning

required by the jobs identified as appropriate for her by the VE." Id.

The court in Hackett did not hold that an RFC establishing the performance of simple and routine tasks would always conflict with a job that required a level three reasoning level. Furthermore, in this case the ALJ elicited the VE's testimony that any discrepancies between his testimony and the DOT were explained by reliance on his own experience and observations of the identified jobs as they are actually performed. The ALJ complied with SSR 00-4p, and no error occurred. Because there is substantial evidence in the record to support the Commissioner's final decision, the decision should be affirmed.


RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____ December 15th, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed

herein is denied.

ENTERED this _____24th_____ day of _____November_____, 2014.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE